## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

**ERIN SMITH,**

        Plaintiff,

   v.

**JAMES BRADFORD SMITH,** an individual
citizen of Washington, and **SMITH &
GREENE COMPANY,** a Washington
company**,**

        Defendants.

Case No. 3:14-cv-00707-ST

**FINDINGS AND
RECOMMENDATION**

**STEWART, Magistrate Judge:**

### INTRODUCTION

In her Amended Complaint, plaintiff, Erin Smith, alleges claims against her brother-in-law, defendant James Bradford Smith ("Brad Smith"), for his actions as President of defendant Smith & Greene Company ("Smith & Greene") and Manager of Waverly Broadmoor, LLC ("Waverly Broadmoor"). Plaintiff and Brad Smith each hold a 50% membership interest in Waverly Broadmoor which, in turn, owns 50% of the stock in Smith and Greene. Plaintiff alleges claims for a declaratory judgment that the Operating Agreement for Waverly Broadmoor is void (First Claim), for breach of fiduciary duty and breach of the obligation of good faith and fair dealing against both defendants for paying salary and compensation to Brad Smith in lieu of

dividends to plaintiff through Waverly Broadmoor (Second and Third Claims), and to place Smith & Greene in receivership (Fourth Claim).

Plaintiff is a citizen of Oregon, and defendants are citizens of Washington.[1]  The amount in controversy exceeds $75,000.00, exclusive of interest and costs.  Accordingly, this court has diversity jurisdiction under 28 USC § 1332.

Pursuant to the Federal Arbitration Act ("FAA"), 9 USC § 2, defendant Brad Smith has filed a Motion to Compel Arbitration and Dismiss Complaint (docket #22).  For the reasons set for the below, arbitration should be compelled and this action should be stayed.

## STANDARDS

The FAA mandates that written arbitration agreements involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 USC § 2.  If an issue is subject to arbitration under a written agreement, the court is required to direct that issue to arbitration and stay the trial of the remaining issues until arbitration is complete.  9 USC § 3.  However, a court may order parties to proceed to arbitration only upon "being satisfied that the making of the agreement for arbitration . . . is not in issue."  9 USC § 4.  "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue."  *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F3d 1126, 1130 (9th Cir 2000), citing 9 USC § 4 (other citations omitted).

"When the crux of the complaint is not the invalidity of the contract as a whole, but rather the arbitration provision itself, then the federal courts must decide whether the arbitration provision is invalid and unenforceable under [the FAA]."  *Nagrampa v. MailCoups, Inc.*, 469

---

[1] Plaintiff cured the lack of diversity jurisdiction in the original Complaint by eliminating Waverly Broadmoor as a defendant in the Amended Complaint.  Under FRCP 21, a dispensable non-diverse party may be dropped at any time in order perfect the court's original jurisdiction.  *Galt G/S v. JSS Scandinavia*, 142 F3d 1150, 1154 (9th Cir 1998).

F3d 1257, 1264 (9th Cir 2006).  Courts may invalidate arbitration clauses or agreements by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *AT&T Mobility LLC v. Concepcion*, 131 S Ct 1740, 1746 (2011).  In that regard, federal courts "should apply ordinary state-law principles that govern the formation of contracts." *Ingle v. Circuit City Stores, Inc.*, 328 F3d 1165, 1170 (9th Cir 2003), *cert. denied*, 540 US 1160 (2004), quoting *First Options of Chi., Inc. v. Kaplan*, 514 US 938, 944 (1995).

If the arbitration clause is enforceable, then the party seeking to avoid arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration.  *Green Tree Fin. Corp. v. Randolph*, 531 US 79, 91 (2000).  It is somewhat unclear as to how evidentiary submissions are treated when considering a request for dismissal in the context of a motion to compel arbitration.  *Sanford v. Memberworks, Inc.*, 483 F3d 956, 963 n9 (9th Cir 2007) (noting uncertainty as to whether "Rule 56 procedures are applicable to a motion to compel" arbitration (citation omitted)).  However, the "denial of a motion to compel arbitration has the same effect as a grant of partial summary judgment denying arbitration." *Cox v. Ocean View Hotel Corp.*, 533 F3d 1114, 1119 (9th Cir 2008).  Accordingly, this court will apply the same evidentiary analysis as for a summary judgment motion, viewing all inferences from the record in the light most favorable to the non-movant.  *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F3d 1084, 1092 (9th Cir 2010).

///

///

///

///

///

## FACTS

Prior to 2004, James and Mary Smith owned 50% (25,000 shares) of Smith & Greene, and Charles Mullen owned the other 50% (25,000 shares).  James Smith Decl. (docket #24), ¶ 1.[2]
In 2004, as part of their estate planning and in anticipation of James Smith's retirement from Smith & Greene, James and Mary Smith formed Waverly Broadmoor as a vehicle to transfer to their two sons, Brad and David Smith (plaintiff's deceased spouse), an indirect ownership interest in 50% of common stock in Smith & Greene.  Complaint, ¶ 7; James Smith Decl., ¶ 3.
The parties dispute whether this transfer was truly a gift as characterized in a September 21, 2004 communication from James Smith to Brad Smith.  James Smith Decl., Ex. 2.

James and Mary Smith redeemed 99% of their stock in Smith & Greene through a "Stock Redemption Agreement" by selling back 24,750 of their 25,000 shares to Smith & Greene.
Plaintiff's Response (docket #31), Ex. 2, p. 1.  The purchase price was $1,022,223.00, paid over 20 years.  *Id.*

Once James and Mary Smith's stock was redeemed, they held 250 outstanding shares which were transferred to Waverly Broadmoor and its two members, Brad and David Smith, each of whom owned 50% of Waverly Broadmoor.  Of the 500 total Smith & Greene shares outstanding, Mr. Mullen's son's wholly owned LLC held 250 and Waverly Broadmoor held 250.
Smith & Greene, for its part, had a total obligation to the departing shareholders of $2,044,446.00.[3]

At the time of the redemption, transfer, and execution of this transaction, James, Mary and Brad Smith were aware that David Smith had terminal brain cancer.  Complaint, ¶ 8.

---

[2] The parties have submitted documents with various attachments.  Citations to affidavits and declarations are identified by the last name of the affiant or declarant, and citations are to the paragraph(s) of and exhibits attached to the affidavit or declaration.
[3] The facts in this paragraph are set forth in Plaintiff's Memorandum (docket #31), p. 2, without supporting evidence.  However, defendant does not appear to dispute them.

Plaintiff and David Smith signed the Waverly Broadmoor Limited Liability Company

Agreement ("Operating Agreement"), although plaintiff claims that they were given insufficient

time to review the terms and conditions which were presented on a take it or leave it basis.

James Smith Decl., ¶ 4; Plaintiff's Response (docket #31), Ex. 6 ("Erin Smith Decl."), ¶ 4.

James asserts that he and Mary met with plaintiff and David Smith to explain the terms of the

Operating Agreement and, in particular, the waiver provision (Section 7.7.3) which provides as

follows:

> 7.7.3 Manager as Director/Employee of Smith & Greene
> Company.  The Members all acknowledge that the Manager
> [Brad], exercising the Company's vote of Smith & Greene
> Company shares, will participate in the election of the board of
> directors of Smith & Greene Company, and will have indirect
> authority over his compensation as an employee of Smith &
> Greene Company.  Notwithstanding this conflict, the Manager
> [Brad] shall have no liability to the Company or to any Member as
> a result of voting the Smith & Greene Company shares or actions
> of the board of directors of Smith & Greene Company, including
> his own actions if a member of such board, unless such acts are
> ultimately determined to constitute waste, fraud, or result in
> personal compensation to Manager [Brad] from Smith & Greene
> Company which is disallowed for tax deductibility purposes to
> Smith & Greene Company as  excessive compensation.

Complaint, Ex. 1, p. 18.

The Operating Agreement also contains the following arbitration clause (Section 10.10):

> 10.10 Arbitration of Disputes.  Any controversy or claim arising
> out of or relating to this Agreement, or the breach thereof, shall be
> resolved by arbitration in accordance with the rules of Judicial
> Arbitration and Mediation Services (JAMS) and judgment upon
> the award rendered by the arbitrator may be entered in any court
> having jurisdiction over the parties.

*Id*, p. 22.

From 2004 to 2010, Brad Smith earned about $1 million per year as President of Smith &

Greene.  Plaintiff's Response, Ex. 4.  Smith & Greene paid no dividends to Waverly Broadmoor

5 – FINDINGS AND RECOMMENDATION

during those 10 years.  Complaint, ¶ 12; Erin Smith Decl., ¶ 6.  By virtue of her husband's death in 2008, plaintiff owns 50% of Waverly Broadmoor which, in turn, owns 50% of Smith & Greene.  Complaint, ¶¶ 5-6.  This failure of Smith and Greene to pay dividends, combined with the restraints in the Operating Agreement on plaintiff's alienation of her interest in Waverly Broadmoor, has divested plaintiff of any financial gain and reduced or eliminated her interest in Waverly Broadmoor.  Erin Smith Decl., ¶¶ 6-7.

## **FINDINGS**

Defendant Brad Smith argues that the claims in the Complaint arise out of the Operating Agreement which unambiguously requires arbitration and, therefore, moves to compel arbitration and dismiss this action.  Plaintiff counters that the Operating Agreement is an unenforceable contract of adhesion and that her claims fall outside the scope of the arbitration clause.

## I.    **Applicability of FAA**

Although not addressed by the parties, the court must first decide whether the FAA applies to the contract in question.  The court may only compel arbitration of "[a] written provision in any maritime transaction *or a contract evidencing a transaction involving commerce* to settle by arbitration a controversy."  9 USC § 2 (emphasis added).  According to the Supreme Court, the phrase "involving commerce" "signals Congress' intent to exercise its Commerce Clause power to the full." *Allied–Bruce Terminix Cos. v. Dobson*, 513 US 265, 277 (1995).  The Court also has interpreted the phrase "evidencing a transaction involving commerce" broadly to mean "the transaction must involve interstate commerce, but that the parties to the transaction need not have contemplated that the transaction had an interstate commerce connection." *Rogers v. Royal Caribbean Cruise Line*, 547 F3d 1148, 1154 (9th Cir 2008), *cert. denied*, 557 US 920 (2009).

The Operating Agreement was a contract among plaintiff's late husband David, his brother Brad, and Waverly Broadmoor, of which each brother owned 50%. Complaint, ¶¶ 7-8. Waverly Broadmoor existed only as a vehicle for holding gifts or transfers of stock from James and Mary Smith to their sons. *Id*, Ex. 1, p. 3. However, conveyance of those shares gave each brother a 25% indirect ownership in Smith & Greene, a manufacturing company located in Washington with national sales. Smith & Greene has offices in Oregon and employed both Brad and David Smith at the time the Operating Agreement was signed. Based on these factors and the lack of dispute over the court's authority to compel arbitration, the court assumes, without deciding, that the Operating Agreement was a contract "evidencing a transaction involving commerce" and, thus, subject to the FAA. *See Golden v. Dameron Hosp. Ass'n*, CIV S-12-0751 LKK, 2012 WL 4208779, at *4 (ED Cal Sept. 19, 2012) (applying factors used to determine the reach of the Commerce Clause in Sherman Act cases to FAA); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 US 395, 401 (1967) (finding consulting agreement "inextricably tied to . . . continuing operations of an interstate manufacturing and wholesaling business" covered by the FAA).

## II.    <u>Validity of Arbitration Clause</u>

Plaintiff does not plead that the arbitration clause itself, as opposed to the entire Operating Agreement, is unenforceable. Instead she challenges the validity of the entire Operating Agreement as the product of fraudulent inducement by seeking a judgment declaring that it is "void as against public policy, unlawful and fraudulent." Complaint, ¶¶ 14-16 (First Claim).

As held by the Supreme Court in *Prima Paint*, when a court is called upon to determine the threshold question of the enforceability of the arbitration clause, it must look to "the validity

and scope of the arbitration clause itself," and not the contract as a whole. *Republic of Nicaragua v. Standard Fruit Co.* ("*Standard Fruit*"), 937 F2d 469, 471 (9th Cir 1991), *cert. denied*, 503 US 919 (1992) (citation omitted). As explained by the Ninth Circuit:

> The Court rejected Prima Paint's argument that it could not be forced into arbitration because its entire contract (including the arbitration clause at issue) was fraudulently induced and therefore void. The Court held that because the fraud did not go to the making of the arbitration clause itself, the clause was severable and enforceable. It therefore ordered the parties to proceed to arbitration of all disputed issues, including the questions of fraud in the inducement and the entire contract's validity.

*Id* at 476, citing *Prima Paint*, 388 US at 404.

An arbitration clause must be treated as severable from the rest of the contract, absent a clear intent to the contrary, and enforced "even though the rest of the contract is later held invalid by the arbitrator." *Prima Paint*, 388 US at 401 (citation omitted).

Plaintiff claims that the circumstances surrounding the signing of the Operating Agreement, including her late husband's terminal illness, their vulnerable financial position, the familial relationship among the parties, and the short time she had to consider the contract, placed her under duress. James and Mary Smith allegedly failed to disclose that the Stock Redemption Agreements would obligate Smith & Greene to pay $2 million to its departing owners over the next 20 years. Plaintiff also alleges that defendants specifically drafted the waiver provision to justify Brad Smith's retention, as compensation, of Smith and Greene's profits that would otherwise have been paid as dividends and that her in-laws fraudulently induced her to sign the contract without the opportunity to negotiate its terms. However, she does not extend these accusations specifically to the arbitration clause. In fact, neither of the declarations by plaintiff and James Smith mentions any discussion of the arbitration clause when they met to go over the terms of the Operating Agreement before signing. James Smith attests,

8 – FINDINGS AND RECOMMENDATION

and plaintiff does not refute, that plaintiff and David Smith expressed no reservations or

objections to the Operating Agreement at that meeting.  James Smith Decl., ¶ 4.

When, as here, the plaintiff does not specifically attack the validity of the formation of

the arbitration clause, the court may not adjudicate fraud claims directed at the contract as a

whole.  "[I]t is a mainstay of the [FAA's] substantive law that attacks on the validity of the

contract, as distinct from attacks on the validity of the arbitration clause itself, are to be resolved

by the arbitrator in the first instance, not by a federal or state court."  *Nitro-Lift Technologies,*

*L.L.C. v. Howard*, 133 S Ct 500, 503 (2012) (internal quotation marks and citation omitted).

*But see Cohen v. Wedbush, Noble, Cooke, Inc.*, 841 F2d 282, 286-87 (9th Cir 1988), *overruled on*

*other grounds by Ticknor v. Choice Hotels Int'l, Inc.*, 265 F3d 931 (9th Cir 2001) (holding not

suitable for arbitration the issue of plaintiff's claim of fraudulent inducement to enter into the

agreement to arbitrate by failing to disclose the effect of the arbitration clause).  Thus, the court

need not address plaintiff's arguments that the Operating Agreement was procedurally and/or

substantively unconscionable.

### III.    Scope of Arbitration Clause

Plaintiff maintains that even if the arbitration clause is enforceable, her claims fall outside

its scope.  "[A] party cannot be required to submit to arbitration any dispute which [it] has not

agreed to submit."  *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.,* 363 US 574, 582

(1960).  The question of "whether the parties have submitted a particular dispute to arbitration,

*i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination [u]nless the parties

clearly and unmistakably provide otherwise.'"  *Howsam v. Dean Witter Reynolds, Inc.*, 537 US

79, 83 (2002) (alteration in original), quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*,

475 US 643, 649 (1986).  "The court is to make this determination by applying the federal

substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the [FAA]." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 US 614, 626 (1985) (internal quotation marks and citation omitted). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id* (citation omitted).

The arbitration clause in the Operating Agreement is very broad by providing that "[a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be resolved by arbitration." Complaint, Ex. 1, p. 22. Clauses including only "arising under" or similar language are interpreted narrowly and exclude "matters or claims independent of the contract or collateral thereto." *Mediterranean Enters. v. Ssangyong Corp.*, 708 F2d 1458, 1463 (9th Cir 1983); *see also Tracer Research Corp. v. Nat'l Envtl. Servs. Co.*, 42 F3d 1292, 1295 (9th Cir 1994), *cert. dismissed*, 515 US 1187 (1995) (discussing cases interpreting language similar to "arising under"). However, "when parties intend to include a broad arbitration provision, they provide for arbitration 'arising out of or related to' the agreement." *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F3d 914, 922 (9th Cir 2011) (citation omitted), *cert. denied*, 132 S Ct 1862 (2012), quoting *Mediterranean Enters.*, 708 F2d at 1464; *see also Bosinger v. Phillips Plastics Corp.*, 57 F Supp2d 986, 993 (SD Cal 1999) (comparing the phrases "arising out of" and "relating to"). This is consistent with the Supreme Court's referral of claims of fraudulent inducement to arbitration under a clause identical to the one here. *See Prima Paint*, 388 US at 398 (broadly interpreting the clause "Any controversy or claim arising out of or relating to this Agreement, or the breach thereof"). Once it is decided that the arbitration clause should be interpreted broadly, the factual allegations in the complaint "need only 'touch matters' covered by the contract." *Simula, Inc. v. Autoliv, Inc.*, 175 F3d 716, 721 (9th Cir 1999), quoting *Mitsubishi Motors*, 473 US at 624 n13.

Plaintiff argues that her claims concern only Brad Smith's conduct as President of Smith & Greene after the formation of the Operating Agreement (Second, Third, and Fourth Claims) and are unrelated to the Operating Agreement itself. Those claims concern defendants' role in failing to pay stock dividends to Waverly Broadmoor and, hence, to plaintiff, while paying compensation to its management, including Brad Smith, in derogation of their fiduciary duty and duty of good faith and fair dealing. In essence, plaintiff challenges the decisions made by Smith & Greene, guided and abetted by Brad Smith. Plaintiff concedes that the waiver provision in the Operating Agreement would foreclose any claim against Brad Smith based on his conflict of interest in his dual roles, but she does not allege such a claim. In contrast, she contends that her claims resemble those of a disgruntled minority shareholder based on the diminution of the value of the Smith & Greene shares.

The problem is that plaintiff's shares in Smith and Greene are not controlled directly by her, but are controlled by Waverly Broadmoor in which she holds a 50% interest. Based on that posture, the terms of the Operating Agreement are inextricably intertwined with her claims of misconduct by Brad Smith. The Complaint clearly associates Brad Smith's roles as both Manager of Waverly Broadmoor to elect the Board of Directors of Smith and Greene and also as President and of Smith and Greene to make decisions regarding the non-payment of dividends resulting in damage to plaintiff. Despite plaintiff's attempt to artfully plead around the arbitration clause, her claims against Brad Smith touch matters covered by the Operating Agreement.

## IV.    **Stay or Dismissal**

Brad Smith seeks dismissal with prejudice if his motion to compel arbitration is granted. This court has the authority, upon application by one of the parties, to either grant a stay pending

arbitration or to dismiss all claims barred by an arbitration clause. *Sparling v. Hoffman Constr. Co., Inc.*, 864 F2d 635, 638 (9th Cir 1988); *see also Johnmohammadi v. Bloomingdale's, Inc.*, 755 F3d 1072, 1074 (9th Cir 2014). Other courts have chosen to stay a case pending arbitration rather than dismiss it, even when confronted with an arbitration clause that covers all the plaintiff's claims. *See e.g., Bosinger v. Phillips Plastics Corp.*, 57 F Supp2d 986, 993 n7 (SD Cal 1999).

Here only one defendant seeks arbitration and dismissal. Not being a party to the Operating Agreement, Smith and Greene cannot seek arbitration of plaintiff's claims against it. Since the arbitration decision regarding the claims against Brad Smith may well have some bearing on the merits of the remaining claims against Smith & Greene, the better alternative is to stay this case pending the arbitration decision as to plaintiff's claims against Brad Smith.

## RECOMMENDATION

Defendant Brad Smith's Motion to Compel Arbitration (docket #22) should be GRANTED in part and DENIED in part by requiring plaintiff to resolve her claims against Brad Smith through arbitration pursuant to Section 10.10 of the Operating Agreement and by staying this action pending arbitration of those claims.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due Friday, October 03, 2014. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

///

///

///

12 – FINDINGS AND RECOMMENDATION

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED  September 16, 2014.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge